UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ADAM X., BRIAN Y., CASEY Z., on behalf of themselves and all others situated, and the AMERICAN CIVIL LIBERTIES UNION OF NEW JERSEY, and the ARC OF NEW JERSEY,<br><br>     Plaintiffs,<br>  v.<br><br>NEW JERSEY DEPARTMENT OF CORRECTIONS, VICTORIA KUHN, in her official capacity as Acting Commissioner of the New Jersey Department of Corrections, NEW JERSEY DEPARTMENT OF EDUCATION, and ANGELICA ALLEN-MCMILLAN, in her official capacity as Acting Commissioner of the New Jersey Department of Education,<br><br>     Defendants. | Civil Action No.: 3:17-cv-00188-FLW-LHG |

**DECLARATION OF JEANNE LOCICERO IN SUPPORT
OF MOTION FOR CLASS CERTIFICATION AND PRELIMINARY APPROVAL
OF SETTLEMENT AGREEMENT**

I, Jeanne LoCicero, hereby declare:

  1.  I am an attorney licensed to practice law in the State of New Jersey and admitted to the United States District Court for the District of New Jersey. I am counsel of record for Plaintiffs in the above-captioned case. This declaration is based upon my personal knowledge. If called to testify, I could testify competently to the facts described in this declaration.

  2.  I submit this declaration in support of Plaintiffs' Motion for Class Certification and Preliminary Approval of Settlement.

1

**EXHIBITS**

1. Attached are true and correct copies of the following documents:

    a. Attached hereto as **Exhibit 1** is a true and correct copy of the Settlement Agreement entered into between Plaintiffs and Defendants on July 15, 2021.

    b. Attached hereto as **Exhibit 2** is a true and correct copy of the Notice to the Class, comprised of the Full Notice, One-Page Flyer, and Compensatory Education Form.

    c. Attached hereto as **Exhibit 3** is an email from Deputy Attorney General Michael Vomacka to Plaintiffs' Counsel, dated July 15, 2021, providing a non-confidential summary of class member population data.

**PROPOSED CLASS COUNSEL'S QUALIFICATIONS**

2. I am the Legal Director at the American Civil Liberties Union of New Jersey ("ACLU-NJ"), and, along with Disability Rights Advocates ("DRA") and Proskauer Rose LLP, am proposed class counsel in this case.

3. The ACLU-NJ is a private, non-profit, non-partisan membership organization dedicated to the principle of individual liberty embodied in the Constitution. Founded in 1960, the ACLU-NJ has approximately 41,000 members and supporters in New Jersey. The ACLU-NJ is the state affiliate of the American Civil Liberties Union, which was founded in 1920 for identical purposes, and is composed of more than 1,750,000 members and supporters nationwide. The ACLU of New Jersey has long advocated for the constitutional rights of prisoners and detainees in county jails, state prisons, and other correctional facilities, representing them in state and federal courts and before state agencies.

4. The ACLU-NJ has extensive experience litigating class actions in a wide range of public interest and constitutional matters. Representative class actions handled by the ACLU-NJ include *Sojourner A. v. N.J. Dep't of Human Services*, No. ESX-L-10171-97 (N.J. Sup. Ct., Law. Div.) (challenging New Jersey's welfare cap), *Jones v. Hayman*, No. MER-C-123-07 (N.J. Sup. Ct., Chancery Div.) (challenging discriminatory conditions of confinement afforded female prisoners), and *Colon v. Passaic County*, No. 2:08-cv-04439-DMC-MF (D.N.J.) (challenging unconstitutional conditions of confinement at county jail).

5. I have specialized in the use of litigation to advance the public interest for more than 20 years, focusing almost exclusively on cases impacting the constitutional and civil rights of New Jerseyans, including those in state custody. I served as class counsel in the *Jones* and *Colon* actions listed above.

6. Prior to joining the ACLU-NJ in 2004, I worked for three years as a litigator at Debevoise & Plimpton LLP. I earned my J.D. with highest honors from the Rutgers School of Law – Newark in 2000 and my B.A. from Douglass College, Rutgers University in 1995.

7. Also working on this case for the ACLU-NJ is Staff Attorney Tess Borden.

8. Ms. Borden is licensed to practice in New Jersey and is admitted to the United States District Court for the District of New Jersey.  Ms. Borden received her J.D. from Harvard Law School cum laude in 2014 and her B.A. from Yale College in 2008. Ms. Borden's practice includes representing people incarcerated in New Jersey state prisons and county jails. Prior to joining the ACLU-NJ, Ms. Borden worked on federal cases involving criminal law reform and constitutional rights at the ACLU National Office in New York.

9. The ACLU-NJ is committed to litigating this case and enforcing this settlement vigorously on behalf of the Plaintiff Class. The ACLU-NJ has the resources required to litigate and enforce this matter in a cost-effective, efficient, and thorough manner.

10. To my knowledge, the ACLU-NJ lawyers have no conflicts of interest that would prevent them from providing zealous representation of the Named Plaintiffs and the Class.

11. The ACLU-NJ is also an Organizational Plaintiff in this litigation. The Declaration of Amol Sinha, ACLU-NJ Executive Director, is filed contemporaneously on behalf of the ACLU-NJ as Organizational Plaintiff.

## THE PROPOSED SETTLEMENT AGREEMENT IS FAIR AND REASONABLE

12. As explained in Plaintiffs' unopposed motion, the Parties achieved the Settlement Agreement (the "Agreement") through a series of arms-length negotiations before and with assistance from Magistrate Judge Goodman. These negotiations spanned from Spring 2018 to July 2021, as outlined in detail in the Declaration of Rebecca Rodgers, filed contemporaneously.

13. The substantive relief ultimately agreed to was informed by the process the Parties engaged in with a neutral Court-appointed expert, before the commencement of formal settlement negotiations. On May 19, 2017, following Defendants' Answer to the Amended Complaint, the Court appointed Dr. Joseph Gagnon to review and evaluate the New Jersey Department of Corrections' ("DOC") provision of special education and the New Jersey Department of Educations' ("DOE") oversight thereof, and to recommend solutions.

14. Although the Parties did not engage in formal discovery, as part of the expert process, the DOC, DOE and Plaintiffs' Counsel produced over 20,000 pages of documents to Dr. Gagnon from July 2017 through March 2018, including student records, education materials, department policies, internal management procedures, operations records, and related items. Dr.

Gagnon relied on these documents, and Counsel for the Parties thoroughly reviewed them both at that time and in negotiating provisions of DOC policy changes and other relief provided in the Settlement Agreement.

15. Additionally, Dr. Gagnon spent nearly 95 hours on-site at DOC prisons with Plaintiffs' and Defendants' counsel. He interviewed over 60 incarcerated students, met with teaching staff, and observed instruction of students with disabilities at various facilities.

16. Dr. Gagnon presented the results of his document review and on-site interviews and observations in a 58-page expert report, produced to the Parties in March 2018, and subsequently provided to the Court. The report detailed extensive findings regarding deficiencies in Defendants' provision of special education services and verified the Named Plaintiffs' factual allegations contained in the Complaint.

17. After reviewing and discussing Dr. Gagnon's report, the Parties entered into settlement discussions. It is my belief and experience that Dr. Gagnon's expert review, analysis, and report was critical to the Parties' negotiation of the Agreement presented to the Court today, which includes a stipulation by Defendants, for purposes of this lawsuit only and in order to settle this matter, that the education services provided at DOC prisons necessitate the remedial measures contained in the Agreement.

18. Since filing the Amended Complaint and during the more than three years of settlement negotiations, Plaintiffs' counsel have continued to meet with and interview members of the putative class, as well as the three individual Named Plaintiffs and two Organizational Plaintiffs. These interviews resulted in the collection of extensive evidence of Defendants' denial of education to students with disabilities, which also informed negotiations. Because substantive relief was crafted based on class members' and Plaintiffs' input, and based on what I know from

these interviews and information-collection, it is my belief that the vast majority of the proposed Class will support the relief contained in the Agreement.

19. As detailed in the Declaration of Rebecca Rodgers, the Agreement will provide substantial benefits to the proposed class while avoiding the risks and delays of litigation. Further, it is clear that the proposed class includes a large number of individuals, and thus that the relief contained in the Agreement will impact a significant number of lives.

20. Specifically, as part of settlement negotiations, counsel for the Parties have discussed the process of providing notice to class members, should the Court preliminarily approve the Agreement and form and method of Notice at Exhibit 2 and certify the proposed class. Accordingly, counsel for the Parties have discussed identification of class members. Defendants have produced information to Plaintiffs' counsel regarding the number of putative class members for the years relevant to this lawsuit (January 2015 to the present, according to the proposed class definition negotiated and agreed to by the Parties). This number far exceeds the threshold for numerosity in this Circuit. While Defendants have marked the particular information Attorneys' Eyes Only, Deputy Attorney General Michael Vomacka has provided a non-confidential summary of this population data in an email attached here as Exhibit 3. That summary indicates the class size is in the hundreds. Specifically, it states that the DOC's recent data searches, conducted in May and June 2021, have identified 422 putative class members, 53 of whom were still in DOC custody at the time of the search.

## **FEES AND COSTS**

21. The Agreement also provides that Plaintiffs have the right to seek and recover reasonable attorneys' fees and costs. The Parties have agreed to an award of $975,000, subject to Court approval.

22. Plaintiffs will file a subsequent motion to the Court for approval of the amount of fees agreed to by the Parties in the Agreement, pursuant to Federal Rule of Civil Procedure 23(h). The papers for such a motion will detail further the extensive efforts that Class Counsel have undergone in vigilantly litigating and settling this case.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 15, 2021 in Newark, New Jersey.

*s/ Jeanne LoCicero*
Jeanne LoCicero
